IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-10155
Summary Calendar
_____

STONEHENGE/FASA-TEXAS JDC, Limited Partnership,

Plaintiff-Appellee,

versus

VANCE C. MILLER,

Defendant-Appellant.

_____

Appeal from the United States District Court for
the Northern District of Texas
(3:94-CV-912-G)
_____

September 24, 1998

Before REAVLEY, BENAVIDES and PARKER, Circuit Judges.

PER CURIAM:[*]

Vance C. Miller appeals an order of a magistrate judge directing him to turn over stock in the Preston Trail Golf Club, a country club, to appellee and judgment creditor Stonehenge/FASA-Texas, JDC, L.P. (Stonehenge). Stonehenge sought

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the stock pursuant to the Texas turnover statute.[1]  We reverse
and remand for further proceedings.

The district judge referred the application for turnover
relief to the magistrate judge "for a hearing, if necessary, and
for determination," under 28 U.S.C. § 636(b).  Stonehenge argues
that since Miller failed to file objections to the magistrate's
order, review on appeal is limited to the plain error standard of
review.

In *Douglass v. United Services Automobile Association*,[2] we
held that the plain error standard applies when the complaining
party fails to object to a report and recommendation of the
magistrate judge under 28 U.S.C. § 636(b)(1)(B).  Section
636(b)(1) provides that a party may object to the proposed
findings of fact and recommendations of a magistrate judge under
§ 636(b)(1)(B), and the plain error standard adopted in *Douglass*
provides the consequence of failing to file objections as
contemplated by the statute.  In the pending case, however, the
district court did not refer the application for turnover relief
to the magistrate judge for a report and recommendation under §
636(b)(1)(B), but referred the matter to the magistrate "for
determination."  The statutory basis for this referral is less

---

[1]  Tex. Civ. Prac. & Rem. Code § 31.002 (Vernon 1997).
Under Fed. R. Civ. P. 64, state law remedies are available in
federal court to secure satisfaction of a judgment.

[2]  79 F.3d 1415, 1417-18 (5th Cir. 1996) (en banc).

than clear.[3]  Section 636(b)(1)(A) authorizes a district court to designate a magistrate judge to "hear and determine any pretrial matter," excepting certain dispositive motions, but here the motion concerned a post-trial matter.  Arguably the referral was made under § 636(b)(3), providing that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States."  Neither the statute nor Fed. R. Civ. P. 72 set out a procedure for making an objection to a § 636(b)(3) ruling.[4]  We further note that the

---

[3]  Miller does not argue on appeal that the magistrate lacked the statutory authority to rule on the application for turnover.  Accordingly this issue is waived.  *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 n.2 (5th Cir. 1996).  An exception to this rule is that the court of appeals has a duty to consider, *sua sponte* if necessary, the basis of the district court's jurisdiction.  *Solsona v. Warden, F.C.I.*, 821 F.2d 1129, 1132 n.2 (5th Cir. 1987).  However, we have held that proceeding before a magistrate judge without consent is only a procedural error, rather than a jurisdictional error, so long as the judgment in the case was entered by the district judge.  *EEOC v. West La. Health Servs., Inc.*, 959 F.2d 1277, 1282 (5th Cir. 1992).  Here the judgment in the case was entered by the district judge; the application for a turnover order was merely an ancillary proceeding in aid of collecting the judgment. The parties could have proceeded before the magistrate judge by consent under 28 U.S.C. § 636(c), regardless of any other basis for referring the turnover application to the magistrate judge, and therefore a failure to obtain such consent was at most a procedural error, rather than a jurisdictional defect that we are oblige to notice *sua sponte*.

[4]  Under Rule 72(a), if a magistrate judge hears and determines a "*pretrial* matter not dispositive of a claim or defense," a party objecting to the order may file objections to the order within ten days, thus tracking the language of § 636(b)(1) with respect to proposed findings of fact and recommendations made pursuant to § 636(b)(1)(B).  The Rule further provides that "a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made."  The Advisory Committee Notes indicates that the purpose of this language is to provide a uniform 10-day rule for nondispositive motions decided by the magistrate judge and

3

plain error standard adopted in *Douglass* only applies if "the party has been served with notice that such consequences will result from a failure to object."[5]  We are unable to locate any such notice in the record.  We therefore apply the same standard of review we would apply if the turnover order had been made by the district judge.[6]

Treating the magistrate's order as we would an order of the district judge, a turnover order "is reviewed under an abuse of discretion standard and may be reversed only if the court has acted in an unreasonable or arbitrary manner."[7]  "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[8]

---

dispositive motions on which the magistrate makes proposed findings of fact and recommendations.  However, the wording of Rule 72(a), with its reference pretrial matters, only applies to pretrial nondispositive motions under § 636(b)(1)(A).

[5]  *Douglass*, 79 F.3d at 1429.

[6]  Applying the same standard of review we would apply if the ruling had been made by the district judge is consistent with our practice of applying the same standards when the magistrate's ruling is directly appealable to the court of appeals, without intermediate review by the district judge, as when the magistrate tries a case and enters judgment by consent of the parties pursuant to 28 U.S.C. § 636(c).  *See Matter of Toyota of Jefferson, Inc.*, 14 F.3d 1088, 1090 (5th Cir. 1994) ("We review a judgment rendered by a magistrate pursuant to 28 U.S.C. § 636(c) as we would a judgment rendered by a district judge.").

[7]  *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 239 (5th Cir. 1997).

[8]  *Esmark Apparel, Inc. v. James*, 10 F.3d 1156, 1163 (5th Cir. 1994).

Miller argued below that he transferred the stock in issue to a partnership of his then minor children on May 1, 1980. There was conflicting evidence on this issue. Miller's son, an attorney, could not confirm the existence of the children's partnership to which the stock was allegedly transferred, nor did the country club learn of the alleged transfer until a few days before the hearing on the turnover application. Miller did not follow club procedures for the transfer of the stock. He continued to use the club facilities and pay club dues after the alleged transfer. He testified that his children had "no membership rights or membership privileges whatsoever, except to receive the proceeds if and when they choose to sell it." However, Miller testified that he had transferred the stock by a written assignment, which was produced at the hearing. He further testified, and produced documentation, that payment for the stock was made from the savings accounts of the children, in the cumulative amount of $11,000. He had originally paid $4,000 for the stock.

Miller argues that in these circumstances, as a legal matter, the Texas turnover statute is not the appropriate vehicle for determining the substantive issue of ownership of the stock. We agree, as we find indistinguishable our decision in *RTC v. Smith*.[9]

In *Smith*, the RTC obtained a judgment against the Smiths. The Smiths then pledged stock they owned to their attorney,

_____

[9] 53 F.3d 72 (5th Cir. 1995).

Fuqua, to secure legal services. The RTC asked the district court to use the Texas turnover statute to void the transfer of the stock to Fuqua as a fraudulent transfer and command the turnover of the stock. After a number of hearings and motions, the district court declared the Smiths' pledge of the stock to Fuqua void, and ordered the United States Marshal to execute on the stock and sell it.

We reversed in part. We noted that the Texas turnover statute "is purely procedural in nature; the statute does not provide for the determination of the substantive rights of the parties," and that "Texas courts do not apply the turnover statute to non-judgment debtors."[10] Applying our understanding of Texas law, we held that the district court could use the Texas turnover statute to compel the Smiths to turn over whatever interest they had in the stock.[11] However, we further held that the statute could not be used to void the pledge of the stock to Fuqua. Noting that the statute "cannot be used to litigate the property rights of third parties," we held that "the district court erred in using the turnover proceeding to determine that the stock pledge was a fraudulent transfer and was therefore

---

[10] *Smith*, 53 F.3d at 77 (quoting *Cross, Kieschnick & Co. v. Johnston*, 892 S.W.2d 435, 439 (Tex. App.--San Antonio 1994, no writ) and *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 (Tex. 1991)).

[11] *Smith*, 53 F.3d at 78.

void.  The validity of the pledge agreement must be challenged in a further proceeding."[12]

As *Smith* upheld the turnover order insofar as it ordered the Smiths "to turn over whatever interest they had in the Park Club stock to the district court,"[13] the magistrate in the pending case was authorized to direct Miller to turn over whatever interest he has in the country club stock.  In *Smith*, we held that the stock should remain in the registry of the district court until such time as Fuqua's interest in the stock was determined in another proceeding.[14]  In the pending case, however, the court ordered the stock turned over to Stonehenge, without any restrictions on Stonehenge's ability to sell the stock to satisfy its judgment (other than a stay pending appeal).  In effect, therefore, the court declared the transfer of the stock to the children and their alleged interest in the stock void, thus deciding the substantive property rights of third parties, in contravention of our holding in *Smith*.  We therefore reverse the turnover order, and remand the case for further proceedings consistent with this opinion.[15]

---

[12] *Id*. at 79-80.

[13] *Id*. at 78.

[14] *Id*. at 80.

[15] Miller separately argues that the turnover statute cannot be used to seize stock because it can only be used to reach property which "cannot readily be attached or levied on by ordinary legal process," Tex. Civ. Prac. & Rem. Code § 31.002(a)(1), and Texas law provides an alternative legal process for the seizure of stock in execution of a judgment.  We rejected a similar argument in *Smith*, noting that "[n]either the statute

7

REVERSED and REMANDED.

---

nor the case law provides a corresponding requirement that the judgment creditor demonstrate that other methods of collecting the judgment have failed." *Smith*, 53 F.3d at 78. *See also Norsul Oil & Mining Ltd. v. Commercial Equip. Leasing Co.*, 703 S.W.2d 345 (Tex. App.--San Antonio 1985, no writ) (affirming order under turnover statute that stock be turned over to judgment creditor). Stonehenge made a sufficient showing that the stock could not readily be attached or levied on by ordinary legal process. On the day Stonehenge attempted to execute on the judgment at Miller's home, the stock certificate was removed from his home and given to his children, by Miller's own admission. The magistrate judge properly noted "concern that this stock certificate was removed from the property after the execution was attempted; and that gets very close to an obstruction of justice."